IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ARIEL SITTER,<br><br>  Plaintiff,<br><br>vs.<br><br>ALLEGHENY HEALTH NETWORK,<br><br>  Defendant. | 2:24-CV-00815-CCW |

**OPINION**

Before the Court is a Motion to Dismiss filed by Defendant Allegheny Health Network. ECF No. 11. For the following reasons, the Court will grant in part and deny in part the Motion.

**I.   Factual Background**

This case arises from Plaintiff Ariel Sitter's work as a nurse at Defendant Allegheny Health Network ("AHN"). The relevant factual allegations, taken as true, are as follows.

Ms. Sitter is an African American woman who is associated with a disabled individual—her grandmother—who had been diagnosed with terminal ovarian cancer. ECF No. 1 ¶¶ 10, 13. Ms. Sitter began working for AHN as a Travel Registered Nurse on December 12, 2022. *Id.* ¶ 9. Her employment contract was to run through March 10, 2023. *Id.* She obtained the employment through AHN and Maxim, a staffing agency. *Id.* As part of this 13-week contract, Ms. Sitter was assigned to work at AHN's West Penn Hospital in the GI Lab Unit. *Id.* ¶ 12. During this contract period, Ms. Sitter was allotted two call-off days. *Id.* ¶ 13. On February 13, 2023, Ms. Sitter became ill with food poisoning and used the first of her two call-off days. *Id.* ¶ 20. On February 27, 2023, Ms. Sitter used her second call-off day to visit her grandmother in the hospital. *Id.* ¶ 21.

Ms. Sitter alleges that during her employment with AHN, her direct supervisor and GI Lab Manager, Margaret Spiker,[1] subjected her "to a higher level of scrutiny than her similarly situated white counterparts who did not have an association with a disabled individual." *Id.* ¶ 15. She contends that Ms. Spiker consistently called her "dumb and incompetent . . . insinuat[ing] that African American Registered Nurses were too incompetent to be Registered Nurses." *Id.* ¶¶ 16, 18. She also asserts that Ms. Spiker "mock[ed] and laugh[ed] at" her while she was performing her job—and that Ms. Spiker permitted other similarly situated white counterparts to do so as well. *Id.* ¶ 17. She further alleges that Ms. Spiker treated her "with discriminatory animus by questioning her requests to use her allocated time off." *Id.* ¶ 19. Ms. Sitter points to an allegedly similarly situated white counterpart, Ashley Foreman, who utilized her call-off days without issue from Ms. Spiker. *Id.* ¶ 22. She also contends that other similarly situated white counterparts were permitted to leave early, but Ms. Spiker did not allow Ms. Sitter to do so. *Id.* ¶ 23. For example, on March 2, 2023, Ms. Sitter requested to leave early because the GI lab was done for the day and she had completed her job duties; however, Ms. Spiker did not allow her to leave early. *Id.* ¶ 25. Meanwhile, Ms. Spiker previously allowed a white employee, Ms. Perka, to leave early from the GI Lab unit. *Id.* ¶ 30. Ms. Sitter confided in AHN nurse aid, Becca Jones, "about the discrimination, harassment, and bullying" she faced from Ms. Spiker. *Id.* ¶ 23.

On March 6, 2023,[2] Ms. Spiker held a meeting with all the GI Lab unit employees in which she stated that Ms. Sitter "had been blacklisted because she was stupid, always asking to leave her shift early, and was a problem." *Id.* ¶ 26. Ms. Sitter maintains that she only requested to leave her

---

[1] In her Complaint, Ms. Sitter sometimes refers to her direct supervisor as "Ms. Striker" instead of "Ms. Spiker." For consistency, the Court will use "Ms. Spiker" throughout.

[2] In the Complaint, this date is March 6, 2024 not March 6, 2023. ECF No. 1 ¶ 26. The Court, however, believes this to be a typographical error since Ms. Sitter's employment ran from December 2022 to March 2023.

2

shift early twice because other employees did not relieve her for her lunch breaks. *Id.* ¶ 27. Despite Ms. Spiker's comments, on March 9, 2023, Maxim recruiter, Eden Fletcher, told Ms. Sitter that AHN was going to extend Ms. Sitter's contract. *Id.* ¶ 32. On March 10, 2023, Ms. Spiker had a meeting with Ms. Sitter in which she "began to interrogate Ms. Sitter about her recent call offs." *Id.* ¶ 34. When Ms. Sitter explained the reasons for her call-offs, Ms. Spiker stated "You [Ms. Sitter] call off more than the permeant [sic] staff in the last few months. It needs to stop, you cannot call off again unless she [Ms. Sitter's grandmother] dies." *Id.* Ms. Spiker than proceeded to raise allegations of Ms. Sitter's past violations, including being on her cell phone and continuously requesting to leave her shift early. *Id.* ¶ 35.

Ms. Sitter then immediately contacted Ms. Fletcher, the Maxim recruiter, to report Ms. Spiker's "harassment and bullying." *Id.* ¶ 37. On March 13, 2023, Ms. Sitter told Ms. Fletcher that she would not be extending her contract with AHN due to the "harassment, bullying, and discrimination." *Id.* ¶ 38. Ms. Fletcher told Ms. Sitter that there was nothing she could do, but she said she would escalate it to her manager. *Id.* ¶ 42. But Ms. Fletcher did not escalate Ms. Sitter's complaint to Maxim and/or AHN's Human Resource Department. *Id.* ¶ 43.

On June 5, 2024, Ms. Sitter filed her Complaint against AHN, alleging employment discrimination and retaliation based on her race and her association with a disabled individual. ECF No. 1. AHN now moves to dismiss the Complaint in its entirety. ECF No. 11. The Motion is fully briefed and ripe for resolution. ECF Nos. 11, 12, 13, 14.

## II.     Legal Standard

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of a claim. In reviewing a motion to dismiss, the court accepts as true a complaint's factual allegations and views them in the light most favorable to the plaintiff. *See Phillips v. Cnty.*

*of Allegheny*, 515 F.3d 224, 228 (3d Cir. 2008).  Although a complaint need not contain detailed factual allegations to survive a motion to dismiss, it cannot rest on mere labels and conclusions. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  That is, "a formulaic recitation of the elements of a cause of action will not do." *Id.*  Accordingly, "[f]actual allegations must be enough to raise a right to relief above the speculative level," *id.*, and be "sufficient . . . to 'state a claim to relief that is plausible on its face,'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570).  "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 556).

The United States Court of Appeals for the Third Circuit has established a three-step process for district courts to follow in analyzing a Rule 12(b)(6) motion:

> First, the court must "tak[e] note of the elements a plaintiff must plead to state a claim." Second, the court should identify allegations that, "because they are no more than conclusions, are not entitled to the assumption of truth." Finally, "where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief."

*Burtch v. Milberg Factors, Inc.*, 662 F.3d 212, 221 (3d Cir. 2011) (quoting *Santiago v. Warminster Twp.*, 629 F.3d 121, 130 (3d Cir. 2010)).  That said, under Rule 8's notice pleading standard, even after the Supreme Court's decisions in *Twombly* and *Iqbal*, a plaintiff need only "allege sufficient facts to raise a reasonable expectation that discovery will uncover proof of her claims." *Connolly v. Lane Constr. Corp.*, 809 F.3d 780, 788–89 (3d Cir. 2016) (finding that "at least for purposes of pleading sufficiency, a complaint need not establish a *prima facie* case in order to survive a motion to dismiss").

4

**III.    Legal Analysis**

In her Complaint, Ms. Sitter alleges that AHN discriminated against her based on her race (African American) in violation of Title VII of the Civil Rights Act, 42 U.S.C. § 2000e-2(a)(1) (Count 1) as well as based on her association with a disabled person (her terminally ill grandmother) in violation of the Americans with Disabilities Act, 42 U.S.C. § 12112(b)(4) (Count 3). She also alleges that AHN retaliated against her when it constructively terminated her employment in violation of the ADA, 42 U.S.C. § 12203(a) (Count 4).[3] Ms. Sitter further brings claims of discrimination and retaliation in violation of the Pennsylvania Human Relations Act, 43 Pa. Stat. Ann. § 951, et seq. (Counts 5 and 6).

AHN responds that Ms. Sitter has failed to establish that AHN was her employer, that she was subjected to an adverse employment action, or that any adverse employment action was taken because of her race or her association with a disabled individual. ECF No. 12. Regarding her retaliation claims specifically, AHN contends that Ms. Sitter does not adequately allege a protected activity, and even if she did, AHN was unaware of the alleged protected activity. ECF Nos. 12, 14. The Court will address each argument below.[4]

**A.    Legal Framework**

To prove a prima facie case of employment discrimination under Title VII, a plaintiff must show that (1) she is a member of a protected class, (2) that she was qualified for the position she sought to attain or retain, (3) that she suffered an adverse employment action, and (4) the action occurred under circumstances that support an inference of intentional discrimination. *Qin v.*

---

[3] In Count 2 of her Complaint, Ms. Sitter brings a retaliation claim under Title VII. ECF No. 1. In her Brief in Opposition, however, Ms. Sitter agrees to dismiss this claim with prejudice, acknowledging that AHN was unaware of any alleged protected activity. ECF No. 13 at 10.

[4] The Court has jurisdiction over the Title VII and ADA claims, which raise federal questions, under 28 U.S.C. § 1331 and supplemental jurisdiction over the state-law claims under 28 U.S.C. § 1367.

*Vertex, Inc.*, 100 F.4th 458, 473 (3d Cir. 2024). Similarly, to establish a prima facie case of associational discrimination under the ADA, a plaintiff must allege that (1) she was subjected to an adverse employment action; (2) she was qualified for her job at the time of the adverse employment action; (3) her employer knew she had a relative or associate with a disability; and (4) the adverse employment action occurred under circumstances raising a reasonable inference that the relative's or associate's disability was a determining factor in the employer's decision. *Dodson v. Coatesville Hospital Corp.*, 773 F. App'x 78, 83 n.8 (3d Cir. 2019) (endorsing a four-part test used by other circuit courts).

Additionally, to establish a prima facie case of retaliation under Title VII or the ADA, a plaintiff must show that (a) she engaged in a protected activity, (b) the employer took materially adverse action against her, and (c) there was a causal connection between the protected activity and the employer's action. *Young v. City of Phila. Police Dept.*, 651 F. App'x 90, 95 (3d Cir. 2016) (citing *Moore v. City of Phila.*, 461 F.3d 331, 340–42 (3d Cir. 2006)) (discussing Title VII retaliation claims); *Wilson v. Childs.' Hosp. of Phila.*, No. 23-3223, 2024 WL 4490601, at *2 (3d Cir. Oct. 15, 2024) (citing *Krouse v. Am. Sterilizer Co.*, 126 F.3d 494, 500 (3d Cir. 1997)) (discussing ADA retaliation claims). Proving a prima facie case is an evidentiary standard, and at the pleading stage, it is not a proper measure of whether a complaint fails to state a claim. *Pedro v. City Fitness, LLC*, 803 F. App'x 647, 651 (3d Cir. 2020). Accordingly, at the motion-to-dismiss stage, courts look only to whether there are "enough facts to raise a reasonable expectation that discovery will reveal evidence of each element." *United States ex rel. Bookwalter v. UPMC*, 946 F.3d 162, 168 (3d Cir. 2019) (cleaned up).

### B.     Ms. Sitter Has Sufficiently Alleged that AHN was her Employer.

In its Motion, AHN asserts that all of Ms. Sitter's claims should be dismissed because she has failed to adequately allege that AHN was her employer. ECF No. 12 at 4–6. It asserts Ms. Sitter only makes "threadbare and conclusory allegations" that both AHN and Maxim employed her which are insufficient to establish AHN as her employer. *Id.* at 4. In response, Ms. Sitter contends that she has sufficiently alleged that AHN employed her because she has stated facts showing "AHN's authority, control and supervision of [her]." ECF No. 13 at 4. The Court agrees with Ms. Sitter that she has sufficiently alleged that AHN was her employer.

Two distinct entities may both be liable for employment discrimination if they are joint employers. *Graves v. Lowery*, 117 F.3d 723, 727 (3d Cir. 1997). A joint employment relationship exists where "two entities exercise significant control over the same employees." *Id.* To determine if an entity exercises significant control over an employee, courts consider the following non-exhaustive factors:

> [T]he skill required; the source of the instrumentalities and tools; the location of the work; the duration of the relationship between the parties; whether the hiring party has the right to assign additional projects to the hired party; the extent of the hired party's discretion over when and how long to work; the method of payment; the hired party's role in hiring and paying assistants; whether the work is part of the regular business of the hiring party; whether the hiring party is in business; the provision of employee benefits; and the tax treatment of the hired party.

*Nationwide Mut. Ins. Co. v. Darden*, 503 U.S. 318, 323–24 (1992); *Faush v. Tuesday Morning, Inc.*, 808 F.3d 208, 214 (3d Cir. 2015) (applying the *Darden* factors in a Title VII case).

Based on these factors, Ms. Sitter has sufficiently alleged that AHN was her employer. First, Ms. Sitter alleges that she began her employment with AHN in December of 2022 and was assigned to AHN's GI Lab in the West Penn Hospital, indicating that she worked at an AHN hospital and used their instrumentalities and tools. ECF No. 1 ¶¶ 9, 12. Next, she states that her

contract ran through March 10, 2023 and that AHN determined whether or not to extend her contract, showing the duration of her assignment and AHN's authority to terminate her employment. *Id.* ¶¶ 9, 32. Ms. Sitter further alleges that AHN controlled her day-to-day employment through Ms. Spiker, Ms. Sitter's direct supervisor and the AHN GI Lab Manager. *Id.* ¶ 15. For example, Ms. Spiker had the right to assign additional projects to Ms. Sitter and had discretion over when and how long she worked. *Id.* ¶¶ 15, 16 (explaining that Ms. Spiker assigned Ms. Sitter to care for certain patients); ¶¶ 23, 25, 28, 61 (explaining that Ms. Spiker controlled the hours Ms. Sitter worked and whether she could leave early); ¶ 34 (explaining that Ms. Spiker controlled whether Ms. Sitter could take off additional days). And while Ms. Sitter does not directly allege that AHN was the entity that paid her or the method of that payment, she does indicate that it was AHN, not Maxim, who paid her. *Id.* ¶ 24 (explaining that an AHN nurse told Ms. Sitter that AHN is paying her to be there.).

Therefore, the Court finds that Ms. Sitter has adequately alleged that AHN was her employer because she pleaded that it had authority to fire her or extend her contract, it paid her salary, and it controlled her daily tasks and work schedule. *Cf. Rice v. KBR*, No. 1:21-cv-1528, 2022 WL 3643649, at *4 (M.D. Pa. Apr. 4, 2022) (finding that plaintiff failed to allege a joint employer relationship where he did not clearly allege who had the authority to hire or fire him; who paid his salary; who was in charge of his daily tasks, provided tools, and had discretion over his work schedule; or any other facts that may weigh in favor of a joint employer relationship).

Accordingly, to the extent AHN seeks dismissal of Ms. Sitter's claims based on the failure to plead that AHN was Ms. Sitter's employer, the Motion will be denied.

### C. Ms. Sitter Has Sufficiently Alleged an Adverse Employment Action.

In her Complaint, the adverse employment action that Ms. Sitter alleges for each claim is that AHN constructively discharged her. ECF No. 1. AHN asserts that the Court should dismiss all of Ms. Sitter's claims because she has failed to adequately plead that she was constructively discharged. ECF No. 12 at 6–9. AHN avers that Ms. Sitter has not sufficiently alleged constructive discharge because she fails to plead "conditions so unpleasant or difficult that a reasonable person would have felt compelled to resign." *Id.* at 7. Ms. Sitter responds that whether she was constructively discharged is a fact-intensive inquiry best resolved at the summary judgment stage, and at this early stage of the case, she has pled sufficient facts to state such a claim. ECF No. 13 at 6–8. The Court agrees with Ms. Sitter that she has sufficiently alleged constructive discharge.

"Constructive discharge occurs when an employer knowingly permits conditions so intolerable that a reasonable person subject to them would resign." *Boddie v. Cardone Indus., Inc.*, No. 20-3058, 2021 WL 4814770, at *2 (3d Cir. Oct. 15, 2021) (cleaned up). Such conditions include threats of discharge or suggestions of resignation or retiring, demotions, pay or benefit reductions, and alteration of job responsibilities. *Brooks v. CBS Radio, Inc.*, 342 F. App'x 771, 777–78 (3d Cir. 2009). But "simple teasing, offhand comments, and isolated incidents (unless extremely serious)" do not rise to the level of intolerable conditions of employment. *Owens v. Allegheny Valley School*, 869 F. Supp. 2d 653, 660 (W.D. Pa. 2012) (Mitchell, J.).

Here, Ms. Sitter alleges that she faced more than simple teasing or offhand comments; instead, she asserts that she was consistently called dumb and incompetent, that she was mocked and laughed at, and faced discrimination, harassment, and bullying throughout her employment. ECF No. 1 ¶¶ 16, 17, 18, 24, 26. Further, Ms. Sitter states that Ms. Spiker threatened to blacklist her from future employment, *id.* ¶¶ 26, 41, and that Ms. Spiker altered Ms. Sitter's job

responsibilities, *id.* ¶¶ 16, 30 (explaining that she was forced to care for patients who typically required more than one nurse), ¶¶ 23, 25, 28, 29, 30 (explaining that she was not permitted to leave early even if her job responsibilities were done, the GI Lab was closing, she was not the scheduled "late" employee, and other employees were permitted to leave early). Therefore, at this stage in the case, the Court finds that Ms. Sitter has pled "enough facts to raise a reasonable expectation that discovery will reveal evidence" of whether she was constructively discharged. *Bookwalter*, 946 F.3d at 168.

Accordingly, to the extent AHN seeks dismissal of Ms. Sitter's claims based on the failure to adequately allege an adverse employment action, the Motion will be denied.[5]

### D. Ms. Sitter Has Sufficiently Alleged an Associational Discrimination Claim Under the ADA.

AHN seeks to dismiss Ms. Sitter's ADA discrimination claim (Count 3) because she has not pled that her constructive discharge was because of her association with a disabled individual.[6] ECF No. 12 at 9–12. Specifically, AHN asserts that Ms. Sitter has failed to allege that she made AHN aware of her association with a disabled individual and that she failed to plead that her constructive termination occurred under circumstances raising an inference of discrimination. *Id.* Ms. Sitter responds that she has stated an ADA discrimination claim because her Complaint states "specific allegations of her association with a disabled individual" and alleges facts showing that

---

[5] Because AHN brings no other challenges to Ms. Sitter's race discrimination claim (Count 1), the Court will not dismiss it.

[6] AHN also argues that Ms. Sitter has waived or abandoned her ADA discrimination claim because she failed to respond to AHN's arguments in her brief in opposition. ECF No. 14 at 4. The Court finds, however, that Ms. Sitter appears to address AHN's arguments in her brief, albeit inartfully. For example, Ms. Sitter discusses both her ADA retaliation and discrimination claims together in one section, despite the heading only referring to her retaliation claim. *See* ECF No. 13 at 9. In this section, she briefly responds to AHN's two main arguments against her discrimination claim: that she failed to plead AHN was aware of her association with a disabled individual and that she did not plead an inference of intentional discrimination. Therefore, because Ms. Sitter's brief does not entirely omit a response to AHN's arguments, the Court declines to dismiss her ADA discrimination claim on grounds of waiver or abandonment.

"the discriminatory action[s] on the part of the defendant were due to Plaintiff' [sic] association with a disabled individual." ECF No. 13 at 9. The Court agrees that Ms. Sitter has sufficiently alleged an associational discrimination claim under the ADA.

First, the Court finds that Ms. Sitter has adequately alleged facts showing that AHN was aware of her association with a disabled individual. For example, she explicitly states that "Defendants were fully aware of Ms. Sitter's association with a disabled individual" at the time she was working at AHN. ECF No. 1 ¶¶ 14, 74. And although AHN asserts that this statement is too conclusory to state a claim, Ms. Sitter includes other facts that allege AHN was aware of her association. For instance, Ms. Sitter alleges that during a meeting on March 10, 2023, Ms. Spiker told Ms. Sitter that she could not call off again unless her grandmother dies, ECF No. 1 ¶ 34, which implies that Ms. Spiker, an AHN manager, was aware of Ms. Sitter's association with a disabled individual. Therefore, the Court finds that Ms. Sitter has sufficiently alleged that AHN was aware of her grandmother's disability.

Second, the Court finds that Ms. Sitter has sufficiently alleged that she was discriminated against on the basis of her association with a disabled individual "[A]t the pleading stage, . . . a complaint is sufficient when it 'pleads how, when, and where [the employer] allegedly discriminated against [the employee]' such that an employer is on notice of the basis of the claim against it." *Ruggiero v. Mount Nittany Medical Center*, 736 F. App'x 35, 41 (3d Cir. 2018). Here, Ms. Sitter has alleged that AHN discriminated against her on the basis of disability when, on March 10, 2023, Ms. Spiker called Ms. Sitter into a meeting and "began to interrogate her" about her recent call offs and told her that she could not call off again unless her grandmother dies. ECF No. 1 ¶¶ 33, 34. Ms. Sitter also alleges that Ms. Spiker sent an email saying that she was blacklisted from employment at AHN, and that AHN constructively discharged her because she

11

used her second call-off day to care for her grandmother. *Id.* ¶¶ 76. Such allegations are "facially plausible and give fair notice to [AHN] of the basis of [Ms. Sitter's] claim." *Dreibelbis v. Cnty. of Berks*, 438 F. Supp. 3d 304, 313 (E.D. Pa. 2020). Therefore, the Court finds that, at this early stage in the case, Ms. Sitter has met her "minimal burden as to the issue of causation." *Id.* at 314–15.

Accordingly, to the extent AHN seeks dismiss of Ms. Sitter's ADA associational disability discrimination claim in Count 3, the Motion will be denied.

### E. Ms. Sitter Has Failed to Allege a Protected Activity Under the ADA.

AHN seeks to dismiss Ms. Sitter's ADA retaliation claim (Count 4), asserting that she has failed to allege a protected activity and, even if she had, she failed to allege that AHN was made aware of such activity. ECF No. 12 at 12–13; 14 at 3–4. Ms. Sitter responds that she has sufficiently stated an ADA retaliation claim because AHN knew about her grandmother's disability and constructively discharged her shortly after she took a day off to care for her grandmother. ECF No. 13 at 9–10. The Court agrees with AHN that Ms. Sitter has failed to allege a protected activity.

The ADA prohibits retaliation against any individual who "has opposed any act or practice made unlawful by [the ADA] or because such individual made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under [the ADA]." 42 U.S.C. § 12203(a). Thus, under the ADA, protected activity includes requests for a reasonable accommodation for a disability, *Hitch v. Frick Pittsburgh*, No. 23-2065, 2024 WL 2237963, at *2 (3d Cir. May 17, 2024), and complaints of discrimination on the basis of disability, *Kendall v. Postmaster General of U.S.*, 543 F. App'x 141, 144 (3d Cir. 2013). But merely informing an

employer of one's disability does not constitute protected activity. *Lackey v. Heart of Lancaster Reg'l Med. Ctr.*, 704 F. App'x 41, 49–50 (3d Cir. 2017).

In her Complaint, Ms. Sitter asserts that she "engaged in a protected activity when she made Ms. Spiker and AHN fully aware of her association with a disabled individual." ECF No. 1 ¶ 81. But such an activity—informing an employer of one's association with a disabled individual—is not protected under the ADA. *See Lackey*, 704 F. App'x at 49–50. Additionally, none of Ms. Sitter's other allegations could be construed as protected activity. For example, while Ms. Sitter alleges that she used one of her two call-off days to care for her grandmother, ECF No. 1 ¶ 21, she does not allege that she actually requested any accommodations. Further, Ms. Sitter alleges that she complained to a Maxim recruiter and other AHN employees about the "discrimination, harassment, and bullying she was being forced to endure." *Id.* ¶¶ 23, 37, 38, 40. But she does not allege that she complained specifically about discrimination based on disability—as required to constitute protected activity under the ADA. *See Kendall*, 543 F. App'x at 144 (affirming that plaintiff's EEOC charge of discrimination did not constitute protected activity because "at no time did [plaintiff] complain of discrimination or retaliation on the basis of disability.").

Accordingly, the Court will dismiss Ms. Sitter's ADA retaliation claim in Count 4 because she has failed to allege a protected activity. The Court, however, will grant her leave to amend.

**F.  Ms. Sitter's Discrimination and Retaliation Claims Under the PHRA.**

Ms. Sitter also brings two state-law claims: one for discrimination (Count 5) and one for retaliation (Count 6), both under the PHRA. ECF No. 1 at 13. The PHRA is "analyzed under the same standards as its federal counterparts." *Niculcea v. Stone Ridge Towne Ctr.*, No. 22-1577, 2022 WL 17484280, at *3 (3d Cir. Dec. 7, 2022) (citing *Kelly v. Drexel Univ.*, 94 F.3d 102, 105

(3d Cir. 1996)) (analyzing claims under the ADA, Title VII, and the PHRA). Therefore, because the Court will dismiss Ms. Sitter's ADA and Title VII retaliation claims, it will also dismiss her PHRA retaliation claim in Count 6. The Court, however, will grant Ms. Sitter leave to amend.

**IV. Conclusion**

For the forgoing reasons, the Court will GRANT IN PART and DENY IN PART AHN's Motion to Dismiss such that Ms. Sitter's Title VII retaliation claim (Count 2) is DISMISSED WITH PREJUDICE and her ADA retaliation claim (Count 4) and PHRA retaliation claim (Count 6) are DISMISSED WITHOUT PREJUDICE. The Court will DENY AHN's Motion to Dismiss Ms. Sitter's Title VII discrimination claim (Count 1), ADA discrimination claim (Count 3), and PHRA discrimination claim (Count 5). Finally, Ms. Sitter will be granted leave to amend her ADA and PHRA retaliation claims (Counts 4 and 6).

DATED this 2nd day of January, 2025.

BY THE COURT:

/s/ Christy Criswell Wiegand
CHRISTY CRISWELL WIEGAND
United States District Judge

cc (via ECF email notification):

All Counsel of Record